IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BABAJIDE M. AKINBODE,                )
                                     )
                                     )
                    Plaintiff,       )        Case No.  05 C 4600
        v.                           )
                                     )        Judge Virginia M. Kendall
MOTOROLA, INC.,                      )
                                     )
                    Defendant.       )
                                     )

## MEMORANDUM OPINION AND ORDER

Plaintiff Babajide M. Akinbode ("Akinbode") brings suit under Title VII of the Civil Rights

Act of 1964, 42 U.S.C. §§ 2000(e) *et seq*., 42 U.S.C. § 1981 and the Age Discrimination in

Employment Act alleging that Motorola, Inc. ("Motorola") harassed and discriminated against him

on the basis of age, race, color and national origin.  Akinbode also brings breach of contract and

promissory estoppel claims stemming from Motorola's progressive discipline policy.  Motorola

moves for summary judgment on all of Akinbode's claims.  For the reasons set forth below,

Motorola's motion for summary judgment is granted.

## STATEMENT OF FACTS

Akinbode is a 46-year-old Nigerian and is African American.  Pltf. 56.1 Resp. at ¶ 4.[1]

Motorola hired Akinbode in April 2000 as a Systems Engineer, grade E07.  Pltf. 56.1 Resp. at ¶ 8.

As a Systems Engineer, Akinbode was responsible for network management, design, installation,

---

[1] Citations to "Plaintiff Babajide M. Akinbode's Local Rule 56.1 Response to Defendant's
Statement of Facts in Support of its Motion for Summary Judgment" have been abbreviated to "Pltf. 56.1
Resp."  Citations to "Defendant's Response to Plaintiff's Additional Material Facts Not in Dispute" have
been abbreviated to "Def. 56.1 Resp."

configuration, and development. *Id.* Communicating clearly is an important part of the Systems Engineer position. Pltf. 56.1 Resp. at ¶ 12. Ann Marie Johlie ("Johlie") hired Akinbode, was his only supervisor, and evaluated him on a yearly basis. Pltf. 56.1 Resp. at ¶ 9. Johlie was aware that Akinbode was Nigerian when she hired him. *Id.* Akinbode was hired on an at will basis and Motorola could terminate his employment at any time. Pltf. 56.1 Resp. at ¶ 50.

When Akinbode was hired, Motorola gave him copies of its Progressive Discipline Policy, its Appropriate Use of Computer Resources Policy called the SOP E-62 ("E-62 policy"), and its Code of Business Conduct. Pltf. 56.1 Resp. at ¶¶ 17, 21, 49. Akinbode reviewed Motorola's Progressive Discipline Policy frequently. Pltf. 56.1 Resp. at ¶ 49. According to Akinbode, there was nothing unclear or vague about the policy. *Id.* The policy sets forth Motorola's process for dealing with employees who violate policies, whose actions are disruptive to a normal business environment, or whose conduct may have a negative impact on the employment relationship or Motorola's reputation and standing in the community. Def. Ex. R. The policy categorizes infractions into three classes and sets forth the discipline that is "normally" given to employees specific to the classes of infractions. *Id.* Written warnings are "normally" given for Class II infractions. *Id.* Class II infractions are described as follows:

> Examples of Class II infractions include (but are not limited to): Inappropriate conduct; disregard of safe work procedures; making offensive remarks, including remarks based upon an individual's race, color, religion, sex, national origin, age, disability, sexual orientation or veteran's status; using abuse, profane of sexually graphic language; failure to secure Motorola's information under Motorola's Protection of Proprietary Information Standard Operating Procedure; misuse of Motorola resources or equipment (e.g. computers, telephone, pager, email, internet, software) under Standard Operating Procedure E-62. Class infractions will remain active for the duration of employment. Any subsequent Final Written Warning, of any nature, may result in termination of employment.

Akinbode did not receive a written warning from Motorola regarding any of the conduct that

Motorola now claims is the reason for his firing prior to his termination. Def. 56.1 Resp. at ¶ 60.

The parties dispute whether Motorola was obligated to give Akinbode a "Final Written Warning" for his first infraction. Motorola denies that it had such a duty citing the following language from the Policy:

> Each infraction results in a determination of discipline level, based on its seriousness, previous discipline and a review of the circumstances of the infraction. This determination is within the discretion of management and human resources, and may include an analysis of the employee's entire record, including attendance and performance. Each situation is given individual consideration and depending on the specific circumstances may deviate from the examples set forth in this policy. For example, a Class II infraction may be handled as a Class III or, a record or pattern of previous Class I infractions may result in a decision to discipline pursuant to the steps set forth for Class II. Pltf. 56.1 Resp. at ¶ 37.

Motorola's Progressive Discipline Policy also states:

> This policy does not constitute an employment contract or implied promise of any kind. The terms of this policy may be modified or eliminated by the company at any time with or without notice.

Pltf. 56.1 Resp. at ¶ 48.

Akinbode was required to abide by the provisions of the E-62 policy as an ongoing condition of employment. Pltf. 56.1 Resp. at ¶ 17. Failure to abide by the E-62 policy could lead to termination of employment. *Id.* Each time Akinbode turned on his Motorola computer, a message appeared on the screen warning Akinbode that his computer usage must comply with the provisions of the E-62 policy. Pltf. 56.1 Resp. at ¶ 18. By completing the log-in process, Akinbode acknowledged and consented to the provisions of the E-62 policy. *Id.* The E-62 policy sets forth the acceptable uses of Motorola's computer resources and prohibits usage that does not accomplish Motorola's goals and initiatives or that interferes with its employees' job responsibilities. *Id.* Examples of inappropriate use of Motorola's computer resources included communicating

information that could be perceived as official Motorola positions or endorsements without its approval and participating or engaging in any activities that violate the law, the Code of Business Conduct, key beliefs, or Motorola policies. Pltf. 56.1 Resp. at ¶ 20.

Akinbode was also required to abide by Motorola's Code of Business Conduct as an ongoing condition of employment. Pltf. 56.1 Resp. at ¶ 21. Failure to comply with the Code could lead to termination of employment. *Id.* According to the Code, an employee's outside activities must not harm job performance and the Code prohibits Motorola employees from using its name, property or equipment for the support of political activities. Pltf. 56.1 Resp. at ¶ 22. Performing non-Motorola related work during business hours violates the provisions of the Business Code. *Id.*

Another policy of Motorola's in effect at the time was its Safe and Respectful Workplace policy which prohibits harassment and establishes a reporting procedure. Pltf. 56.1 Resp. at ¶ 16. It states that an individual who feels harassed should report it to his "supervisor, department management, Human Resource representative, the local Human Resources Compliance representative or a representative of the law Department." Pltf. 56.1 Resp. at ¶ 16.

Johlie evaluated Akinbode from 2000 to 2004, prepared performance evaluations, and ranked Akinbode based upon his overall performance. Def. 56.1 Resp. at ¶¶ 52, 53, 54, 55. Motorola considers individuals for promotion when they demonstrate that they have the skills and behaviors necessary to perform at the next level. Pltf. 56.1 Resp. at ¶ 10.[2] An individual's performance

---

[2]Akinbode neither admits nor denies paragraphs 10, 11, 23, 24, 25, 27, and 35 of Motorola's Rule 56.1 Statement of Facts due to insufficient information. Under the local Rules of the Northern District of Illinois, a summary judgment response claiming insufficient information to admit or deny is improper and constitutes an admission. *Vlasek v. Village of Homewood*, 2004 U.S. Dist. LEXIS 10422, * 2 (N.D. Ill. June 7, 2004) (citing *McGuire v. United Parcel Serv.*, 152 F. 3d 673, 675 (7th Cir. 1998). Akinbode neither admits or denies portions of his responses to paragraphs 16 and 43, and therefore, the allegations insufficiently

evaluation and ranking are integral in assessing whether that individual should be promoted. Pltf. 56.1 Resp. at ¶ 11. Typically, individuals who receive promotions have been rated either "excellent" or "outstanding" in their end of year evaluations. *Id.*

Johlie evaluated Akinbode's performance in 2000 and 2001. Her overall evaluation of Akinbode's performance in 2000 was that he "meets expectations." Def. 56.1 Resp. at ¶ 52. The following year, Johlie evaluated Akinbode's performance as "meets expectations" and Johlie stated that Akinbode "works very hard, is dedicated but sometimes looks (sic) focus on tasks that need to be finish (sic) by certain date." Def. 56.1 Resp. at ¶ 53. Johlie felt that many of Akinbode's project goals were completed on time as planned but that he "[N]eeds help prioritizing tasks." *Id.*

In 2002, Johlie evaluated Akinbode and concluded that he was "good at completing assigned activities on time" and that he "achieved critical dates on software turnovers." Def. 56.1 Resp. at ¶ 54. Akinbode had "taken on a great variety of work" and his "role as a lab manager would prepare him for bigger roles in the future." *Id.* Johlie felt that he would "go out of his way to help others," and that Akinbode "built good relationships". Def. 56.1 Resp. at ¶ 54. Johlie's evaluation also discussed concentrating on executing results and due dates, and establishing specific goals and work plans. Pltf. 56.1 Resp. at ¶ 13.[3] Akinbode was to take time management and communication

---

rebutted are deemed admitted.

[3] Akinbode denies all or some of the facts of paragraphs 13, 14, 28, 29, 30, 31, 32, 34, 36, 41, and 47, but fails to cite to any parts of the record in support of his denials. As such, these facts are deemed admitted pursuant to local rule 56.1(b)(the response to the movant's statement of facts shall contain "a response to each numbered paragraph, including in the case of any disagreement, specific references to the affidavits, parts of the records, and other supporting material relied upon....All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.") *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997).

classes by October, 30, 2002. *Id.* Johlie also asked Akinbode to meet on weekly basis with a more senior employee to prioritize his tasks due to his time management problems. *Id*. Johlie thanked him for his hard work and ranked him at the "meet expectations" level. Def. 56.1 Resp. at ¶ 54.

In 2003, however, Johlie ranked Akinbode as "Least Effective" ranking– the lowest ranking individual in his group. Pltf. 56.1 Resp. at ¶ 14.[4] Akinbode was spending time on "unimportant" things and needed to prioritize his tasks and improve his time management skills. *Id.* Johlie noted that "it takes considerable oversight from management to keep [Akinbode] focused on what's most important" and that Akinbode needed to work more independently. *Id.* Items had to be re-planned because Akinbode missed target dates and Akinbode had to be removed from attending weekly PC meeting due to adverse communication issues.[5] *Id.* Several people avoided working with Akinbode due to communication issues. *Id.* CISCO, an outside vendor, requested that some of Akinbode's cases should be updated by other employees. *Id.* The 2003 evaluation further states:

> "[W]hen verbally discussing a solution with [Akinbode], it has been noted that he will describe a fix, but when questioned about it, he will change his story...causing people to not understand the truth in the matter because it seems he is saying what others want to hear." *Id.*

In 2004, Johlie prepared her fourth yearly evaluation of Akinbode's performance. Def. 56.1 Resp. at ¶ 55. Akinbode's progress related to two of his business goals was ranked as "poor" and his overall ranking was "needs improvement." Pltf. 56.1 Resp. at ¶ 15; Def. Ex. G. Johlie noted that

---

[4] Motorola contends that "LE/SI" stands for "least effective/some improvement needed." *Id.* Akinbode contends that "SI" stands for "significant improvement" but the 2004 evaluation does not support his assertion. Def. 56.1 Resp. at ¶ 55. The parties agree that "LE" stands for "least effective." *Id.*

[5] The record does not provide the Court with further details regarding what those issues were.

"external groups continue to experience communication issues" and that while Akinbode "has taken numerous communication classes, the situation is improving only slightly" *Id*. She also stated that Akinbode "may be distracted by activities that are not relevant to his job. He should minimize non-work related activities while he is at work and focus on doing this job with high quality." *Id*. The parties dispute that Akinbode did all that he was asked to do and performed as he was directed. Def. 56.1 Resp. at ¶ 56.

Johlie believed that Akinbode's accent was a problem. Def. 56.1 Resp. at ¶ 66. Johlie told Akinbode on two to three occasions, the first of which occurred during a performance evaluation, "you don't speak like an American and people have a hard time picking up your accent." Pltf. 56.1 Resp. at ¶ 42. David Gwo ("Gwo"), a co-employee, asked another whether he could understand Akinbode's accent, a comment that Akinbode characterizes as making fun of his accent to other employees. Def. 56.1 Resp. at ¶ 68. Gwo assisted with Akinbode's performance planning. Def. 56.1 Resp. at ¶ 67. The parties dispute whether Gwo's reports to Johlie hurt Akinbode's chances to receive desirable projects. Def. 56.1 Resp. at ¶ 67. Vince Patrizzi ("Patrizzi"), a co-employee, told Akinbode that he had a very strong accent and that he did not speak like an American during a performance feedback session. Pltf. 56.1 Resp. at ¶ 43. Neither Gwo nor Patrizzi had the authority to promote or discharge Akinbode. *Id*. Akinbode reported feeling harassed to Johlie once. Pltf. 56.1 Resp. at ¶ 46. Akinbode did not complain about harassment to managers of his department, Human Resources, Motorola's Law Department, or anyone else at Motorola. *Id*. The parties dispute that Akinbode raised discrimination issues during every performance review. Def. 56.1 Resp. at ¶ 70.

During the fall of 2004, Johlie received several calls from a London-based Motorola

employee alerting her that Akinbode might be communicating with foreign governments. Pltf. 56.1 Resp. at ¶ 23. Because communicating with foreign governments could be a violation of Motorola's Ethics Policy, Johlie contacted Motorola's Ethics Line to seek guidance. *Id.* Motorola's Ethics line recommended a forensic examination of Akinbode's computer. Pltf. 56.1 Resp. at ¶ 24. Accordingly, Motorola's Information Protection Services performed a forensic analysis on Akinbode's computer which consisted of an analysis of Akinbode's e-mail, internet history, and hard drive. *Id.* The forensic examination of Akinbode's computer found no evidence that Akinbode had represented Motorola inappropriately by contacting foreign governments. Pltf. 56.1 Resp. at ¶ 25. However, the examination found:

> More than one gigabyte of non-work related files;
> More than 1000 files pertaining to a company called Pacific Energy;
> Evidence that Akinbode opened and worked on non-work related matters including the development of a website for Pacific Energy at work;
> Many files including photos sent to Akinbode through Motorola's e-mail for unloading into a website for a beauty contest;
> Hundreds of eBay URL's reflecting that Akinbode had participated in eBay's auctions and bought two cars through eBay during work hours;
> Extensive use of Motorola emails to manage his role as an officer of a Chicago based Nigerian political organization, PDP;
> Evidence that Akinbode deleted more than 4,000 files the day before the forensic examination. *Id.*

Akinbode used his Motorola e-mail to communicate with a political organization, developed a web site for a London based company called Pacific Energy, and communicated with Pacific Energy using his Motorola e-mail address. Pltf. 56.1 Resp. at ¶ 30. Akinbode bid on two cars in an eBay auction during work hours. *Id.* Akinbode concedes that he has no evidence to demonstrate that the results of the forensics examination performed on his computer are in any way inaccurate. Pltf. 56.1 Resp. at ¶ 26.

Motorola also analyzed Akinbode's 2004 phone usage. Pltf. 56.1 Resp. at ¶ 27. The analysis

revealed that Akinbode made hundreds of personal long distance calls from his Motorola phone to London, Nigeria and other national and international locations during work hours and that Akinbode's phone usage represented 23% of the cost for long distance for the entire department. *Id.* Akinbode conceded that some of the locations that he called using his Motorola phone did not have Motorola facilities or were not business related. Pltf. 56.1 Resp. at ¶ 28; *see* Def. Ex. B at pp. 193-201).[6] The parties dispute whether Akinbode's calls to Nigeria and the United Kingdom were business related. *Id.* Akinbode called the United Kingdom140 times, and testified that he supports Motorola's UK facility, but he could not remember with whom he spoke. *Id.* With respect to his calls to Nigeria, Akinbode planned to obtain an MBA degree in order to be in a better position for doing Motorola business with Africa. Def. 56.1 Resp. at ¶ 58. On one occasion, Johlie provided Akinbode with the name of a salesperson in Africa because Akinbode had told Johlie that a relative in Nigeria was interested in buying a communication system from Motorola. *Id.* Johlie's superior, George Economy, gave Johlie a Nigerian contact to give to Akinbode. *Id.; see also* Johlie Dep. at pp. 92-94. Nonetheless, Akinbode admits that calling Nigeria and the United Kingdom were not part of Akinbode's job duties. Pltf. 56.1 Resp. at ¶ 30.

On October 21, 2004, Akinbode, Johlie, and Scott McEwen ("McEwen") of Motorola's Human Resources Department, met to discuss the forensic exam findings . Pltf. 561. Resp. at ¶ 29.[7]

---

[6] Akinbode conceded that there are no Motorola facilities in Amherst and Atlanta. He doesn't know if there are facilities in the other cities and countries that he called including Boston, Arlington, Chattanooga, Chester Heights, Dedham, and Belgium. He conceded that his calls to Calgary were to his family and were not business related. Pltf. 56.1 Resp. at ¶ 28; see Def. Ex. B at pp. 193-201)

[7] Akinbode denies the allegations of Paragraph 29 but does not support his denial. He cites deposition testimony that he does not remember questions asked during the meeting, but does not attach the deposition testimony to his Response to Defendant's Statement of Facts. Pltf.

According to Motorola, Akinbode admitted that he deleted files from his computer the day before the forensics exam, used his Motorola e-mail account to manage his role as an officer of a political organization, used his Motorola phone to make personal long distance telephone calls, and that his computer contained non-Motorola related files associated with the creation of website. *Id.* Akinbode denies making those admissions because he cannot remember the questions asked during the meeting. *Id.* Four days later, McEwen terminated Akinbode and memorialized his termination in a letter. Pltf. 56.1 Resp. at ¶ 31. The letter states that Akinbode was terminated due to his violation of the E-62 policy and for his abuse of other Motorola resources including long distance telephone service. Def. Ex. Q. Akinbode denies that he was fired for the reasons stated in the letter, but offers no evidence in support of his denial. Pltf. 56.1 Resp. at ¶ 31. Akinbode was terminated in 2004, and therefore, did not have an end of the year evaluation. Pltf. 56.1 Resp. at ¶ 15.

Akinbode was never promoted. Def. 56.1 Resp. at ¶ 63. Younger employees that were hired after Akinbode were promoted. Def. 56.1 Resp. at ¶ 64. Akinbode was the first person hired to do work on Motorola's InfoVista project. Def. 56.1 Resp. at ¶ 62. The parties dispute whether all of the individuals hired after Akinbode for the InfoVista project were promoted. *Id.* Motorola did not give Akinbode the opportunity to work on the development of the Transport Network Configuration Management Project as well as other projects that he cannot identify. Pltf. 56.1 Resp. at ¶ 40. The parties dispute whether Akinbode trained new employees on new projects. Def. 56.1 Resp. at ¶ 63.

Poornima Cholenahalli, Fareed Masarrat and Benjamin Taylor were employed by Motorola and are not the same race, color, or national origin as Akinbode. Def. 56.1 Resp. at ¶ 57. All were

56.1 Resp. at ¶ 29. It is clear from the record that Akinbode concedes that he met with Johlie and McEwen to discuss the forensic analysis of his computer.

promoted; and none of them were discharged. *Id.* None of the aforementioned employees reported to Johlie and all of them received "outstanding," "effective" or "excellent" ratings. Def. 56.1 Resp. at ¶ 57. From April 2000 to October 2004, no employee under Johlie's supervision had job performance problems like Akinbode's and no other employee was terminated. Pltf. 56.1 Resp. at ¶ 35. Similarly, no employee under Johlie's supervision misused Motorola resources and was not terminated. *Id.* Akinbode received a salary increase in 2001, 2002 and 2003. Def. 56.1 Resp. at ¶ 51. Other employees under Johlie's supervision did not receive increases in salary during that time period. Def. 56.1 Resp. at ¶ 51. Akinbode cannot identify an individual with a similar performance evaluation to Akinbode's who Motorola promoted. Pltf. 56.1 Resp. at ¶ 34. Akinbode admits that he has no evidence that would tend to show that Motorola's reasons for not promoting him, namely that he failed to perform at a level deserving of a promotion, is inaccurate.[8] Pltf. 56.1 Resp. at ¶ 33.

## STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment

---

[8] Akinbode admitted at his deposition that he has no evidence that would tend to show that Motorola's reason for not promoting him, namely that he failed to perform at a level deserving of a promotion, is inaccurate. He denies in his Response to Motorola's Statement of Facts that such evidence does not exist, but fails to cite to evidence in the record supportive of his denial.

to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.").

## DISCUSSION

I.    *Discrimination on the basis of Race, Color, and National Origin*

    *A.  The Direct Method*

There are two ways to show discrimination on the basis of a protected class: (I) the "direct method," whereby the plaintiff shows factual evidence of the defendant's intent to discriminate, or (ii) the indirect, "burden-shifting" method articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). A plaintiff may show two kinds of permissive evidence under the "direct method" of proof: (I) so-called "direct evidence" of discriminatory intent; or (ii) circumstantial evidence suggesting discriminatory intent. *See Isbell v. Allstate Ins. Co.,* 418 F.3d 788, 794 (7th Cir. 2005).

    1)    <u>Direct evidence of discriminatory intent</u>

"Direct evidence" of discrimination is evidence which, if believed by the trier of fact, "will prove the particular fact in question without reliance on inference or presumption." *Miller v. Borden, Inc.* 168 F.3d 308, 312 (7th Cir. 1999); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610

(7th Cir. 2006). Direct evidence claims are rare because they essentially require an admission by the decision-maker that he acted based upon the prohibited animus. *See Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061 (7th Cir. 2003). The purest example of direct evidence is an admission by the defendant along the lines of "I fired you because of your national origin." *See Venters v. City of Delphi*, 123 F.3d 956, 972 (7th Cir. 1997). Akinbode contends that Johlie, Patrizzi, and Gwo's remarks regarding his accent constitute direct evidence of discrimination. Accent is generally recognized as a manifestation of national origin. *Hasham v. California State Board of Equalization*, 200 F.3d 1035, 1050 (7th Cir. 2000). Accent and national origin are inextricably intertwined in many cases and evaluating such claims sometimes presents difficult questions for a court requiring a "very searching look" at employment decisions based on accent. *Wang v. Bell & Howell Document Management Products Co.*, 2000 U.S. District LEXIS 18407 (N.D. Ill. 2000) (citing *Fragante v. City & County of Honolulu*, 888 F.2d 591, 596 (9th Cir. 1989).

Although Johlie's comments do not amount to an admission that she terminated Akinbode on the basis of his race, color, or national origin, remarks not amounting to a smoking gun may still constitute direct proof if sufficiently related to the adverse employment action such that they were made contemporaneously with his termination or that they were causally related to his termination. *Venters*, 123 F.3d at 972.; *Geier v. Medtronic, Inc*. 99 F. 3d 238, 242 (7th Cir. 1996) (statements must be "contemporaneous with the [adverse action] or casually related to the [applicable] decision-making process.") Akinbode proffered evidence that Johlie remarked about his accent, which Akinbode asserts is offensive, and that Johlie's remarks were made on two to three occasions, one of which occurred during a performance evaluation. However, Akinbode failed to establish whether any of her comments were made during the time period leading up to his termination or

contemporaneously with his termination. *See e.g. Salvador v. Franklin School Dist.*, 293 F.3d 989, 999 (7th Cir. 2002) (the most relevant time period with respect to Akinbode's job performance is the year leading up this his termination.) Akinbode has also failed to show that Johlie's statements were causally related to his termination. Johlie's comments about Akinbode's accent were related, at least on one occasion, to her decision about Akinbode's performance, but the Akinbode failed to show that they were tied to the ultimate termination decision. Put another way, there was no real link from the record between Johlie's statements and an adverse employment action.

Moreover, Akinbode failed to overcome the common actor inference that exists because Johlie hired Akinbode and was aware of his accent, race, color, and national origin from the outset. *See Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 399 (7th Cir. 1997). Despite Akinbode's assertions that Johlie was motivated by discriminatory animus associated with his accent, the record reflects instead that Johlie hired Akinbode knowing about his accent, evaluated Akinbode for three years as meeting expectations despite his communication issues, and worked with Akinbode in an effort to improve those issues. It follows that Johlie did not suddenly develop an aversion to Akinbode based upon his accent. Instead, her first "poor" evaluation came in 2004 corresponding with other problems such as focusing on non work related activities and not related to issues regarding his accent. Therefore, Johlie's remarks cannot constitute, without more, direct evidence of discrimination.

Even assuming for argument's sake that Akinbode's termination was based in whole or in part upon his accent, Akinbode concedes that communicating clearly is an important part of the Systems Engineer position and "an adverse employment decision may be predicated upon an individual's accent when--but only when--it interferes materially with job performance." *Ichile v.*

14

*City of Chicago*, 1998 U.S. Dist. LEXIS 13764, *15 (N.D. Ill. 1998) (citing *Fragante*, 888 F.2d at 596).

Akinbode also points to Patrizzi and Gwo's comments about his accent as direct evidence of discriminatory animus, but Akinbode has put forth no evidence that Patrizzi held a supervisory position over Akinbode or that he had any decision-making authority with respect to his termination. *See Mlynczak v. Bodman*, 442 F. 3d 1050, 1057-58 (7th Cir. 2006) (statements must come from someone who exercised decision-making authority and "stray remarks made by non-decision makers are not evidence that the decision had a discriminatory motive.") Akinbode put forth evidence that Gwo supervised him and may have provided reports that affected whether he received desirable projects, but not that Gwo provided input into Motorola's decision to terminate him. Even if this Court were to assume that Gwo's reports somehow influenced Akinbode's performance reviews, Akinbode fails to proffer evidence to show that Gwo's comments were made contemporaneously with his termination or that they were casually related. *See Gorence v. Eagle Food Ctrs., Inc.*, 242 F.3d 759, 762 (7th Cir. 2001) (Stray remarks of a derogatory character do not show direct discrimination unless they are related to the adverse employment action); *Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1044 (7th Cir. 1999) ("Inappropriate, but isolated comments that amount to no more than 'stray remarks' in the workplace will not do," as direct evidence of discriminatory motives). Therefore, Patrizzi and Gwo's statements are not direct evidence of discriminatory motive.

  2) <u>Circumstantial evidence of discriminatory intent</u>

Plaintiffs more commonly use circumstantial evidence to show discrimination under the direct method. The plaintiff will use evidence to create a "convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decision maker." *Phelan v.*

*Cook County*, 463 F.3d 773, 779 (7th Cir. 2006), *quoting Rhodes v. Illinois Dept. of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004). Bits and pieces suggesting discriminatory intent, including statistical evidence that employees without the discriminatory characteristic received systematically better treatment, constitute circumstantial evidence. *See Rudin v. Lincoln Land Comm. Coll.*, 420 F.3d 712, 720-21 (7th Cir. 2005), *citing Troupe v. May Dept. Stores*, 20 F.3d 734, 736 (7th Cir. 1994). That circumstantial evidence, however, "must point directly to a discriminatory reason for the employer's action." *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003); *see also Cerutti*, 349 F.3d at 1061.

For the reasons stated set forth above, Akinbode failed to proffer sufficient evidence to create a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by a decision maker, namely, Akinbode failed to proffer evidence that Johlie's statements were contemporaneous or causally related to the decision to terminate him. *Geier v. Medtronic, Inc.*, 99 F.3d 238, 242 (7th Cir. 1996). Akinbode also failed to show that Patrizzi and Gwo provided input into the employment decision and that their remarks were made around the time of and in reference to that decision which is required in order for this Court to infer that the decision makers were influenced by their discriminatory feelings. *Rozskowiak v. Village of Arlington Heights*, 415 F. 3d 608, 612 (7th Cir. 2005) (citing *Hunt v. City of Markham, Ill*. 219 F. 3d 649, 652-53 (7th Cir. 2000)) (emphasis supplied by the *Rozskowiak* Court)(the employee's derogatory remarks unrelated to the plaintiff's termination where the employee did not have "the singular influence" over decision makers.) *Id.*

Akinbode does not argue that he has presented direct evidence of discrimination on the basis of race or color and this Court does not find direct evidence in the record. Based upon the foregoing,

this Court finds that Akinbode has failed to put forth direct evidence of discrimination on the basis of race, color, or national origin.

B.    *The Indirect Method*

Under the indirect paradigm, Akinbode must show that: 1) he was a member of a protected class; 2) he was meeting his employer's legitimate expectations 3) he was terminated; and 4) he was treated less favorably than similarly situated employees outside of the protected class. *Rozskowiak*, 415 F.3d at 614. Once Akinbode establishes his prima facie case, the burden shifts to Motorola to produce a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If Motorola does so, Akinbode must respond with evidence that indicates that Motorola's stated reason for the termination was a pretext for unlawful discrimination. *Id.*

Akinbode has established prongs one and three in that he is an African-America Nigerian and that he suffered an adverse employment action, namely, termination.[9] However, Akinbode has not established that he was meeting Motorola's legitimate expectations or that he was treated less favorably than similarly situated employees.

<u>Akinbode failed to meet Motorola's Legitimate Expectations</u>

Akinbode points to portions of his 2000, 2001, 2002, and 2003 performance evaluations as evidence that he was meeting Motorola's legitimate business expectations. Because Akinbode was terminated in 2004, the most relevant time period with respect to his job performance is the time of his termination, or arguably, the year leading up to his termination. *See e.g. Salvador*, 293 F.3d 989 at 999) (the court must focus on plaintiff's performance at the time of termination because the fact that individual may have been qualified in the past does not mean that he is qualified at a later time).

---

[9]  Akinbode's claim for failure to promote will be addressed separately.

Even though Akinbode met Motorola's expectations and received pay raises from 2000 to 2002, his performance and behavior leading up to his termination fell far short of meeting Motorola's legitimate business expectations. In 2003 Akinbode received a "Least Effective" ranking– the lowest ranking individual in his group and his performance evaluation noted problems with time management and an overall lack of focus on important tasks. Pltf. 56.1 Resp. at ¶ 14. Johlie noted that Akinbode had difficulty prioritizing his task and needed to improve his time management skills. *Id.* Akinbode missed target dates and Akinbode had to be removed from attending weekly PC meeting due to adverse communication issues. *Id.* Other Motorola employees and outside venders avoided working with Akinbode.

Akinbode's performance declined in 2004. Akinbode's progress related to two of his business goals was ranked as "poor" and his overall ranking was "needs improvement." Pltf. 56.1 Resp. at ¶ 15; Def. Ex. G. Johlie noted that "external groups continue to experience communication issues" and that while Akinbode "has taken numerous communication classes, the situation is improving only slightly" *Id.* She also stated that Akinbode "may be distracted by activities that are not relevant to his job. He should minimize non-work related activities while he is a work and focus on doing this job with high quality." *Id.* Most notably, Motorola discovered in 2004 that Akinbode violated its E-62 policy and made hundreds of national and international personal calls using the company phone. Accordingly, during the relevant time period, the record is replete with evidence that Akinbode was ranking below Motorola's expectations and violated company policy– violations that Akinbode knew could lead to his termination.

Even if this Court were to assume that Akinbode met the second prong of his prima facie case, Akinbode has failed to proffer evidence that similarly situated non-African America Nigerians

were treated more favorably. "A similarly situated employee is one who is directly comparable to the plaintiff in all material respects." *Bio v. Federal Express Corp*., 424 F.3d 593, 597 (7th Cir. 2005) (internal quotation omitted). Factors to consider in evaluating individuals who may be directly comparable include whether those employees: "(I) held the same job description; (ii) were subject to the same standards; (iii) were subordinate to the same supervisor; and (iv) had comparable experience, education, and other qualifications - provided the employer considered these latter factors in making the personnel decision." *Id*. (*quoting Ajayi v. Aramark Bus. Servs., Inc*., 336 F.3d 520, 532 (7th Cir. 2003). In support of this prong, Akinbode argues that co-employees Poornima Cholenahalli, Fareed Masarrat and Benjamin Taylor were not the same race, color, or national origin as Akinbode and that they were not discharged. Def. 56.1 Resp. at ¶ 57. However, Akinbode has not established that they were directly comparable to him because none of the aforementioned employees reported to Johlie and their performance ratings at the relevant time period were "outstanding," "effective," and "excellent." Def. 56.1 Resp. at ¶ 57. Additionally, there was no evidence that any of the aforementioned employees violated the E-62 policy or used Motorola resources for personal business or concerns. Moreover, Akinbode concedes that no employee under Johlie's supervision had job performance problems like Akinbode's and was not terminated. Pltf. 56.1 Resp. at ¶ 35. Therefore, Akinbode has failed to put forth evidence to meet the second and fourth prongs of his prima facie case under the indirect method.

Even if this Court were to assume that Akinbode put forth evidence sufficient to establish his prima facie case, Motorola has proffered evidence of a legitimate, non-discriminatory reason for his termination, namely, that Akinbode was performing below expectations, violated company policy, and misused company resources. Pursuant to the burden-shifting approach, Akinbode must

respond with evidence that indicates that Motorola's stated reason for the termination was a pretext for unlawful discrimination. Pretext may be established by showing that discriminatory intent more likely motivated the employer or that "the employer's proffered explanation is unworthy of credence," because the employer's explanation had no basis in fact, was the "real" for the adverse action, or was insufficient to warrant the adverse action. *Collier v. Budd Co.*, 66 F.3d 886, 892 (7th Cir. 1995). In practical terms, the plaintiff must raise a genuine questions as to the credibility of the employer's proffered explanation for the adverse action, or "specifically refute the facts which allegedly support the employer's claim." *Survidas v. Commonwealth Edison, Co.*, 60 F.3d 375, 377 (7th Cir. 1995). At all times, the plaintiff retains the ultimate burden of persuasion that he was the victim of intentional discrimination. *Texas Dep't. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

There is nothing in the record suggesting that Motorola's stated reason for Akinbode's termination is pretext for discrimination. First, Akinbode has not specifically refuted the facts which support Motorola's proffered reason for his termination. In fact, Akinbode conceded that he has no evidence to challenge the accuracy of the forensic analysis and admitted to making hundreds of personal phone calls. Akinbode's evidence supportive of his pretext burden is his own self-serving statements regarding his performance and that he didn't receive a final written warning prior to termination. Akinbode claims that he was meeting Motorola's expectations at the time of his termination are insufficient to contradict an employer's negative assessment of those abilities and do not shed any light on whether Motorola honestly based its termination employment decision on performance-related considerations. *Adusumilli v. City of Chicago*, 164 F.3d 353, 363 (7th Cir. 1998); quoting *Dey v. Colt Construction & Development Co.*, 28 F.3d 1446, 1460 (7th Cir. 1994).

As discussed herein, Motorola was not obligated to give Akinbode a final written warning prior to termination, and therefore, not receiving one is evidence of nothing. Finally, there is nothing in the record suggesting that Johlie, Patrizzi, and Gwo's statements about his accent were related to his termination or that Akinbode's national origin, color, or race was the real motivating factor behind his termination as opposed to his poor performance and misuse of company property.

For the aforementioned reasons, Akinbode has failed to put forth direct or indirect evidence of discrimination on the basis of race, color, and national origin, and therefore, Motorola is entitled to summary judgment as to those claims.

II.     *Discrimination on the basis of age*

The Court analyzes Akinbode's claim of discrimination on the basis of age in the same manner as his claim for discrimination on the basis of race, color and national origin. Akinbode may proceed under either the direct or indirect method of proof. For the foregoing reasons, Akinbode has not proffered evidence under the direct or indirect method such that a reasonable jury could find that Motorola terminated him on the basis of his age.

The only evidence Akinbode put forth relative to his age discrimination claim is that younger employees hired after him were promoted and that one project opportunity was given to younger employees and not to him. Accordingly, Akinbode has not proffered direct or circumstantial evidence of discrimination such as admissions by decision makers that he was terminated on the basis of age. In fact, Akinbode has put forth no evidence that his age was referenced by any Motorola employee at any time.

Akinbode has also failed to meet his prima facie case under the indirect method. For the reasons previously stated, Akinbode has failed to proffer evidence that he performed his job

satisfactorily at the time he was terminated.  Motorola considers individuals for promotion when they demonstrate the skills and behaviors necessary to perform at the next level.  Pltf. 56.1 Resp. at ¶ 10.  An individuals performance evaluation and ranking are integral in assessing whether that individual should be promoted.  Pltf. 56.1 Resp. at ¶ 11.  For the same reasons that Akinbode failed to show that he was meeting Motorola's legitimate business expectations, Akinbode has failed to sufficiently show that he was qualified for an available position for which he applied during the relevant time period.  Akinbode's overall ranking for the four years in question was "meets expectations" and he fell below expectations in 2003 and 2004.  Def. 56.1 Resp. at ¶¶ 14, 15, 52, 53, 54.  After receiving a "least effective" ranking, Motorola discovered that Akinbode had violated company policies and misused its resources.  According, Akinbode has failed to establish that he was qualified for the position.

Even if this Court were to assume that Akinbode was qualified for the position he sought, he failed to proffer evidence that similarly situated younger employees were treated more favorably. Akinbode submits evidence that Poornima Cholenahalli, Fareed Masarrat and Benjamin Taylor were not the same race, color, or national origin as Akinbode and were not terminated, but fails to proffer evidence that they were younger or fell outside of the protected class.  Akinbode argues that unidentified younger employees hired after him received promotions and were given opportunities that he was denied.  However, he proffers no evidence that the unidentified "younger" employees were directly comparable.  Specifically, Akinbode proffers no evidence that the "younger" employees held the same job description,  were subject to the same standards, were subordinate to the same supervisor, and comparable experience, education, and other qualifications. *See Ajayi*, 336 F.3d at 532.  In fact, Akinbode admits that he does not know how the individuals were give the

opportunity were performing relative to him. Pltf. 56.1 Resp. at ¶ 41. For the reasons stated above, Akinbode fails to make a prima facie case of age discrimination and fails to provide sufficient evidence to infer that he was denied an assignment on the basis of his age or any other impermissible factor.

Even assuming that Akinbode offered evidence to establish his prima facie case for age discrimination, he has failed, in addition to the reasons previously stated, to put forth any evidence whatsoever to show that Motorola's proffered reason for his termination was pretextual and was actually motivated by his age. Motorola put forth evidence that Akinbode was terminated and denied a promotion on the basis that he violated company policy, misused company resources, and fell below the performance level necessary to justify promotion. There is nothing in the record to suggest that Motorola's proffered reason is unworthy of credence and that its decision was actually motivated by his age. For the aforementioned reasons, Motorola's Motion for Summary Judgment as to Akinbode's age discrimination claim is granted.

III.    *Harassment on the basis of national origin under Title VII*

Akinbode claims that Johlie, Patrizzi, and Gwo harassed him because of his national origin by commenting about his accent on several occasions. Title VII is violated "When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21(1993); (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). "'Mere utterance of an... epithet which engenders offensive feelings in an employee,' does not sufficiently affect conditions of employment to implicate Title VII**."** *Id.* at 370 (quoting *Meritor*, 477 U.S. at 67); *see also Dey v. Colt Construction*

& *Development Co.*, 1993 WL 105437 *2 (ND. Ill. April 7, 1993). If the conduct is not severe or so pervasive as to create an environment that a reasonable person would find hostile or abusive, then Title VII has not been violated. *Id.* In determining whether an environment is hostile or abusive, a variety of factors are considered including, "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Saxton v. American Telephone & Telegraph*, 10 F.3d 526, 534 (7th Cir. 1993) (quoting *Harris*, 114 S. Ct. at 371).

In this case, Johlie, Patrizzi, and Gwo's statements considered together do not create a hostile or abusive environment. The record doesn't reflect that their comments were more than isolated remarks, nor does it reflect that the comments were frequent in nature.[10] Instead, the remarks were made as part of Akinbode's job performance reviews and in relation to a conclusion that Akinbode did not communicate with his colleagues effectively. Although Akinbode claims that the comments were offensive, he never utilized Motorola's procedure to complaint about them. More significantly, Akinbode has failed to show that the comments were related in time or in substance to his termination 2004, which instead was based upon Akinbode's violation of company policy. Therefore, while their comments may have been offensive to Akinbode, he has failed to create a genuine issue of material fact that they altered the conditions of his employment, or that the comments themselves were unreasonably severe or offensive in nature. Finally, there was no evidence that comments about his accent unreasonably interfered with his work performance.

III.     *Discriminatory failure to promote*

---

[10] Indeed, Akinbode concedes that communicating effectively was an important part of his job, and thus, a reasonable person in Akinbode's position would be expected to receive feedback on whether he was communicating effectively.

Akinbode also brings a discriminatory failure to promote claim against Motorola. To prove a prima facie case of discriminatory failure to promote, the plaintiff must establish that: (1) he belongs to a protected class; (2) he performed his job satisfactorily and was qualified for an available position for which he applied; (3) despite his performance and qualifications, his employer subjected him to adverse employment actions; and (4) his employer treated similarly-situated employees outside his classification more favorably with respect to that position. *Hughes v. Brown,* 20 F.3d 745, 746 (7th Cir. 1994); *see also Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981); *McDonnell Douglas*, 411 U.S. at 802. [11] Akinbode has met the first and third prongs of his failure to promote claim, but has failed to put forth evidence of the second and fourth prongs. For the same reasons stated above regarding Akinbode's failure to meet Motorola's legitimate business expectations, he has failed to show that he performed his job satisfactorily and was qualified for an available position. Similarly, Akinbode has failed to show that similarly situated employees outside his protected class were promoted for the reasons set forth above including that none of the aforementioned employees reported to Akinbode's supervisor and none of the employees engaged in conduct that violated company policy. Additionally, the three employees referenced in Akinbode's Statement of Facts all received performance evaluations that were "outstanding," "excellent," and "effective." Therefore, summary judgment is granted as to

---

[11] While *McDonnell Douglas* addresses a plaintiff's discharge and subsequent refusal to rehire, this case deals with the question of discriminatory refusal to promote. The court has specified the elements it deems necessary to prove a case of discriminatory failure to promote based on national origin. The Supreme Court specifically recognized that because the "facts necessarily will vary in Title VII cases, the specification of the prima facie proof required" from a plaintiff can be flexible and may differ according to various factual situations. *McDonnell Douglas*, 411 U.S. at 802 n.13; *see also Burdine*, 450 U.S. 248, 253 n.6, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981).

Akinbode's claim for discriminatory failure to promote.

IV.    *Akinbode's State Law Claims for Breach of Contract and Promissory Estoppel*

Counts II and III of Akinbode's Amended Complaint allege that Motorola breached provisions of its Progressive Discipline Policy in that it failed to provide Akinbode with a written warning prior to his termination.  Motorola conceded that it did not provide a written warning to Akinbode, but argues that its Progressive Discipline Policy is not a contract and that its provisions did not create a promise unambiguous in terms.  The relevant provisions of Motorola's Progressive Discipline Policy according to Akinbode's Amended Complaint are as follows:

"Class II: These infractions are serious in nature.  Depending upon its severity, the first infraction may not, standing alone, be grounds for termination of employment.  The discipline for a Class II infraction is normally:

1st infraction          -                Final Written Warning

2nd infraction          -                Termination of employment

Examples of Class II infractions include (but are not limited to): Inappropriate conduct; disregard of safe work procedures; making offensive remarks, including remarks based upon an individual's race, color, religion, sex, national origin, age, disability, sexual orientation or veteran's status; using abuse, profane of sexually graphic language; failure to secure Motorola's information under Motorola's Protection of Proprietary Information Standard Operating Procedure; misuse of Motorola resources or equipment (e.g. computers, telephone, pager, email, internet, software) under Standard Operating Procedure E-62.  Class infractions will remain active for the duration of employment.  Any subsequent Final Written Warning, of any nature, may result in termination of employment."

Each infraction results in a determination of discipline level, based on its seriousness, previous discipline and a review of the circumstances of the infraction.  This determination is within the discretion of management and human resources, and may include an analysis of the employee's entire record, including attendance and performance.  Each situation is given individual consideration and depending on the specific circumstances may deviate from the examples set forth in this policy.  For example, a Class II infraction may be handled as a Class III or, a record or pattern of previous Class I infractions may result in a decision to discipline pursuant to the steps set forth for Class II.

> This policy does not constitute an employment contract or implied promise of any kind. The terms of this policy may be modified or eliminated by the company at any time with or without notice.

Pltf. Amended Complaint; Pltf. 56.1 Resp. at ¶¶ 37, 48; Def. Ex. R.

Akinbode conceded that he was hired as an at-will employee that could be terminated at any time. Def. 56.1 Resp. at ¶ 50. An employee who is hired without a fixed term is presumed to be an employee "at will." *Duldulao v. Saint Mary of Nazareth Hospital Center*, 115 Ill. 2d 482, 490 (1987). However, an employment handbook "creates enforceable contractual rights if the traditional requirements for contract formation are present." *Id.* An employee handbook creates contractual rights when (1) the handbook language contains a promise clear enough that the employee would reasonably believe the employer has made an offer; (2) the handbook is disseminated so to make the employee aware of its contents and lead the employee to reasonably believe an offer has been made; and (3) the employee then commences or continues working, thereby accepting the offer. *Id.* at 490. An example of such a contractual right is a handbook containing a clear statement that an employee can only be discharged pursuant to a progressive disciplinary policy. *Id.* at 490-491.

In this case, Akinbode received and reviewed Motorola's Progressive Discipline Policy on a yearly basis and continued working until his termination after receiving it. Def. 56.1 Resp. at ¶ 71. However, the language of the Policy is not absolute in its promises such that Akinbode would reasonably believe that Motorola made an offer. The policy states that the discipline for a Class II infraction is "normally" a final written warning for the first infraction. Def. Ex. R. It also states that each situation is given individual consideration and depending on the specific circumstances, Motorola may deviate from the examples set forth in the policy. Pltf. 56.1 Resp. at ¶ 37.

Accordingly, there is nothing in the policy that is express, explicit, and unequivocal such as a provision that promises Motorola's employees can only be discharged pursuant to the terms of the progressive discipline policy or a provision that gives employee's an absolute right to the Policy's procedures. *Compare Cf. Wheeler v. Phoenix Co. of Chicago*, 658 N.E.2d 532, 536 (Ill. App. 1995) (an employment handbook creates enforceable contract rights when, for example, it contains "a clear statement that an employee can only be discharged pursuant to a progressive disciplinary policy"); *with Duldulao*, 505 N.E.2d at 318 ("termination contemplated by [the employer] cannot occur without proper notice and investigation . . . employees are never dismissed without prior written admonitions . . . and warning notices . . . are required before an employee is dismissed.").

Even if this Court construed the Policy as a binding promise, its disclaimer language negates language which could otherwise reasonably be believed to be an offer for a unilateral contract. *See Moore v. Illinois Bell Telephone Co.,*508 N.E.2d 519, 521 (Ill. App. 1987); *see also Condon v. American Telephone & Telegraph*, 569 N.E.2d 518, 521 (Ill. App. 1991) (the employer included language expressly stating that the document "'is not a contract'" or "'is intended as a general policy statement and not as a contract or commitment'").  In this case, the Policy contains a conspicuous provision that expressly, explicitly, and unequivocally disclaims any contractual obligation by Motorola.  The policy states that it "does not constitute an employment contract or implied promise of any kind and that its terms may be modified or eliminated by the company at any time with or without notice."  Akinbode admitted that he reviewed the policy frequently, there was nothing unclear or vague about its contents.  Pltf. 56.1 Resp. at ¶¶ 49-50.  Therefore, there is no genuine issue of material fact as to whether Motorola's policy created an enforceable contractual right to a final written warning prior to termination.  Akinbode's claim for promissory estoppel fails for the

same reason, namely, that there was no promise made to Akinbode in unambiguous terms. *See Vincent DiVito, Inc. v. Vollmar Clay Products Co.*, 534 N.E.2d 575 (Ill. 1989) (an element of a promissory estoppel claim is that a promise was made in unambiguous terms. Therefore, there is no genuine issue of material fact as to Akinbode's breach of contract and promissory estoppel claims and Motorola's Motion for Summary Judgment is granted.

VI.    *Conclusion and Order*

For the foregoing reasons, Motorola's Motion for Summary Judgment is granted and Akinbode's claims against Motorola are dismissed as a matter of law with prejudice.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: August 13, 2007